UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CIRCLE BLOCK PARTNERS, LLC, <br> CIRCLE BLOCK HOTEL, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> FIREMAN'S FUND INSURANCE <br> COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:20-cv-02512-JPH-MJD <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

The owners of the Conrad Hotel located in downtown Indianapolis brought this case after the Conrad's business plummeted during the COVID-19 pandemic. They filed a property insurance claim for losses with the Conrad's insurer, Fireman's Fund Insurance Company, but the claim was denied. In this case, the owners allege that Fireman's Fund breached the insurance contract when it denied the claim, and they seek a declaratory judgment of insurance coverage. Fireman's Fund has filed a motion to dismiss for failure to state a claim. For the reasons below, that motion is **GRANTED**.

I.
Facts and Background

Because Fireman's Fund has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Circle Block Partners, LLC and Circle Block Hotel, LLC (together, "Circle Block") own the Conrad Hotel in downtown Indianapolis. Dkt. 1-2 at 7 ¶ 1.

1

Circle Block purchased a commercial property insurance policy ("the Policy") from Fireman's Fund to cover the property. *Id.* at 7–8 ¶¶ 1–3. The Policy provides up to $104 million in coverage for real and personal business property and up to $12.25 million in coverage for business income and extra expenses. *Id.* at 8 (Complaint ¶ 3), 49 (Policy). The Policy also provides $1 million in communicable disease coverage, $2.5 million in civil authority coverage, $1 million in dependent property coverage, and $2.5 million in business access coverage. *Id.* at 17 ¶ 42.

In March 2020, Indiana declared "that a public health disaster emergency exists in Indiana attributable to COVID-19." *Id.* at 13–14 ¶ 28. Indiana and Indianapolis issued orders prohibiting non-essential travel, cancelling large gatherings, and limiting hotel use to lodging and carryout services. *Id.* at 13 ¶ 27. Because of the public health emergency associated with COVID-19 and these orders, "Indianapolis lost well over 100,000 visitors expected to travel to the city." *Id.* at 16 ¶ 39.

During this time, the Conrad's "occupancy rates . . . dropped precipitously into the single digits as patrons cancelled their reservations and new bookings came to a halt." *Id.* at 22 ¶ 62. "By March 19, 2020, only six of the hotel's 247 rooms were occupied," and the hotel suspended operations entirely on April 18, 2020. *Id.* The Conrad thus "lost virtually all of its business income during this time," yet it still had ordinary business expenses and incurred "significant additional expenses for cleaning and disinfecting the [p]roperty." *Id.* ¶ 63.

On March 23, 2020, Circle Block submitted notice of its claims to Fireman's Fund, *id.* at 28 ¶ 87, and Fireman's Fund denied the claims on September 2, 2020, *id.* ¶¶ 90–91. Two days later, Circle Block filed this suit in Indiana state court, alleging breach of contract and seeking a declaratory judgment of coverage under the Policy. *Id.* at 7, 29–30. Fireman's Fund removed the case to this court, dkt. 1, and has moved to dismiss the complaint for failure to state a claim, dkt. 19.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616. Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

# III.
# Analysis

## A. Policy Provisions

Circle Block argues that its losses are covered under one or more of five Policy provisions, all of which require "direct physical loss or damage" to either the property or to "a dependent property":

> **(1) Business Income and Extra Expense Coverage:** "[W]e will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations during the period of restoration[1] arising from *direct physical loss or damage to property* at a location, or within 1,000 feet of such location, caused by or resulting from a covered cause of loss,"[2] dkt. 1-2 at 61 (emphasis added);

> **(2) Business Access Coverage:** "We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations at a location if access to such location is impaired or obstructed.  Such impairment or obstruction must . . . [a]rise from *direct physical loss or damage to property* other than at such location; and . . . [b]e caused by or result from a covered cause of loss; and . . . [o]ccur within [1 mile]  . . . from such location," *id.* at 51, 73 (emphasis added);

---

[1] "Period of restoration means the period of time that begins immediately after the time of *direct physical loss or damage* caused by or resulting from a covered cause of loss to property . . ." Dkt. 1-2 at 74, 113 (emphasis added).

[2] "Covered cause of loss means *risks of direct physical loss or damage* not excluded or limited in this Coverage Form."  Dkt. 1-2 at 107 ¶ 13 (emphasis added).

**(3) Communicable Disease Coverage:** "We will pay for *direct physical loss or damage to Property Insured* caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to: (a) [t]ear out and replace any part of Property Insured in order to gain access to the communicable disease; (b) [r]epair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and (c) [m]itigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease," *id.* at 76–77 (emphasis added).

**(4) Civil Authority Coverage:** "We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of your operations caused by action of civil authority that prohibits access to a location. Such prohibition of access to such location by a civil authority must . . . [a]rise from *direct physical loss or damage to property* other than at such location; and . . . [b]e caused by or result from a covered cause of loss; and . . . [o]ccur within [1 mile] . . . from such location," *id.* at 51, 73 (emphasis added); and

**(5) Dependent Property Coverage:** "We will pay for the actual loss of business income and necessary extra expense you sustain due to the necessary suspension of operations during the period of restoration at a location. The suspension must be due to *direct physical loss or damage at the location of a dependent property* . . . caused by or resulting from a covered cause of loss," *id.* at 73 (emphasis added).

*See* dkt. 36; dkt. 20 at 12–15.

### B. "Direct Physical Loss or Damage to Property"

Federal jurisdiction in this case is based on diversity, and the parties agree that Indiana law applies. *See* dkt. 20; dkt. 36. The Court "must apply Indiana law by doing [its] best to predict how the Indiana Supreme Court would decide" the issue. *Webber*, 923 F.3d at 482; *see Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 788 (7th Cir. 2017). "Insurance policies are contracts subject to the same rules of judicial construction as other contracts." *Erie Indem. Co. for*

*Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018) (citation omitted).  "When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning."  *Id.*  But "[w]here there is ambiguity, insurance policies are construed strictly against the insurer, and the policy language is viewed from the standpoint of the insured."  *State Farm Mut. Auto. Ins. Co. v. Jakubowicz,* 56 N.E.3d 617, 619 (Ind. 2016).  A court's "first task, therefore, is to determine whether the policy term at issue is ambiguous."  *Erie*, 99 N.E.3d at 630.

Fireman's Fund contends that "direct physical loss or damage to property" requires "direct destruction or physical alteration of property."  Dkt. 20 at 18.  In contrast, Circle Block argues that "direct physical loss"[3] can mean a "quantifiable loss in the property's usefulness or function for normal purposes," so the phrase is at least ambiguous.  *See* dkt. 36 at 16–18.

The Policy does not define the phrase "direct physical loss," *see* dkt. 20 at 18; dkt. 36 at 8, but that does not make it ambiguous, *see Erie*, 99 N.E.3d at 630 ("[F]ailing to define a policy term merely means it has no exclusive special meaning, and the courts can interpret it.").  Instead, the phrase is "ambiguous only if it is susceptible to more than one reasonable interpretation."  *G&G Oil Co. of Indiana v. Cont'l W. Ins. Co.*, 165 N.E.3d 82, 87 (Ind. 2021) (citations and

---

[3] Circle Block argues only that the "loss" portion of the "direct physical loss or damage" clause provides it coverage.  *See* dkt. 36 at 16–17 ("Circle Block need only plausibly allege 'direct physical loss,' which means something different from 'direct physical damage.'").  Therefore, this order addresses only the "loss" alternative under the provision.

6

emphasis omitted). In other words, the question is whether "reasonably intelligent policyholders could . . . legitimately disagree as to what the [phrase] means." *Id.*

The interpretation of "direct physical loss" is informed by "sources that reflect the ordinary meaning of the term at the time the contract was executed," including dictionaries. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008); *see, e.g.*, *Med. Protective Co. of Fort Wayne, Indiana v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1012 (7th Cir. 2021) (applying an undefined insurance policy term's "ordinary meaning"). Both parties cite the Merriam-Webster.com dictionary, which defines the relevant terms to mean:

- Direct: "marked by absence of intervening agency, instrumentality, or influence"
- Physical: "of or relating to, material things"
- Loss: "the harm or privation resulting from loss or separation"

*See* Merriam-Webster.com Dictionary;[4] dkt. 20 at 18; *see* dkt. 36 at 17. The adjectives "direct" and "physical" modify the noun "loss," so the loss (harm or privation) must be both "direct" (marked by absence of an intervening force) and "physical" (of or relating to a material thing). *See Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019) ("Adjectives modify nouns—they pick out a subset of a category that possesses a certain quality.") (citation omitted).

---

[4] https://www.merriam-webster.com (last visited July 21, 2021).

7

As a result, "direct physical loss" to property requires a harmful alteration in the appearance, shape, color, composition, or other material dimension of the property, excluding situations in which an intervening force plays some role. *See, e.g., Georgetown Dental, LLC v. Cincinnati Ins. Co.*, No. 1:21-cv-00383, 2021 WL1967180, at *7 (S.D. Ind. May 17, 2021) ("Consistent with the emerging lion's share of cases, the Court determines that this 'physical loss' or 'physical damage' must be actual and demonstrable physical harm . . . ."); *MHG Hotels, LLC v. Emasco Ins. Co., Inc.*, No. 1:20-cv-1620, slip op. at 11 (S.D. Ind. March 8, 2021) (holding that "the phrase 'direct physical loss' refers to a loss that requires the insured to repair, rebuild, or replace property that has been tangibly, physically altered – not the insured's loss of use of that property."); *Indiana Repertory Theatre, Inc. v. Cincinnati Cas. Co.*, No. 49D01-2004-PL-013137, slip op. at 26 (Ind. Marion Cty. Sup. Ct. Mar. 12, 2021) ("If loss of use alone qualified as direct physical loss to property, then the term 'physical' would have no meaning."); Steven Plitt et al., 10A Couch on Insurance § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal . . . .").

Circle Block's complaint alleges that the Conrad Hotel's occupancy rates (and thus its revenue) dropped "as patrons cancelled their reservations and new bookings came to a halt," causing it to "suspend its operations" when remaining open became "untenable." Dkt. 1-2 at 22 ¶¶ 62–63. Even when accepted as true, these allegations attribute the lost revenue to changes in

human behavior, not a harmful physical change to the Conrad or the property located within it. *Cf. Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878, 884 (S.D. W. Va. 2020) (noting that "the pandemic impact[ed] . . . human behavior," which "caused the Plaintiff economic losses."). And Circle Block's interpretation of "direct physical loss" to property ("quantifiable loss in the property's usefulness or function for normal purposes") reads "physical" out of the Policy. *See* dkt. 36 at 18 (arguing that the Court "should reject the invented requirement of . . . 'physical alteration' put forth by Fireman's Fund"). Because the Conrad Hotel's loss in business caused by the COVID-19 pandemic did not arise from an alteration in the appearance, shape, color, composition, or other material dimension of the property, it is not a "direct physical loss" to the property.

Circle Block contends that Indiana courts have interpreted the phrase "direct physical loss" to include situations where there has not been any alteration to a material dimension of a property. *See* dkt. 36 at 10. Circle Block cites *Cook v. Allstate Ins. Co.*, No. 48D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32 (Madison Cty. Super. Ct. Nov. 30, 2007), for the proposition that the contractual term "direct physical loss" is satisfied when a "physical condition" renders property unsuitable for its intended use. *See* dkt. 36 at 10. *Cook* involved the infestation of a home by poisonous brown recluse spiders. 2007 Ind. Super. LEXIS 32, at *1–3. The parties filed cross motions for summary judgment on the issue of whether there was a "sudden and accidental direct physical loss" as required under the policy. *Id.* at *7. The

9

court held that the insurer could not assert a coverage defense based on the argument that there was no "sudden and accidental direct physical loss" because it waited too long to raise it. *Id.* at *7–8. The insurer was foreclosed from raising that defense under both the common law insurance doctrine of "mend the hold," *id.*, and waiver, *id.* at *8 n.1.

Only after making those holdings did the court discuss whether the spider infestation constituted a "direct physical loss." *See id.* at *8. Because that discussion relates to a third basis for granting summary judgment to Cook on the issue of whether there was a "sudden and accidental direct physical loss," *see id.*, it was unnecessary to the holding and therefore dicta. Moreover, *Cook*, an unpublished state trial court decision, does not cite any controlling Indiana precedent (or any Indiana case for that matter) in support of the statement that "[c]ase law demonstrates that a physical condition that renders property unsuitable for its intended use constitutes a 'direct physical loss' even where some utility remains and, in the case of a building, structural integrity remains." 2007 Ind. Super. LEXIS 32, at *9–10. *Cook* does not support the expansive interpretation of "direct physical loss" that Circle Block urges.

The next case that Circle Block relies upon, *Ports of Indiana v. Lexington Ins. Co.*, No. 1:09-CV-0854, 2011 WL 5523419 (S.D. Ind. Nov. 14, 2011), similarly does not support the conclusion that Circle Block asks the Court to reach. *See* dkt. 36 at 16. In *Ports of Indiana*, an Indiana port authority alleged that it suffered "direct physical loss or damage" when erosion and low water levels damaged nearly 2,000 feet of dock wall. 2011 WL 5523419, at *1. The

insurer did not dispute that 128 feet of dock wall had been physically damaged but contended that the remainder of the dock was unharmed. *See id.* at *2. Because the disputed portion of the wall was "largely underwater," the court considered whether the remaining dock was damaged by assessing its usefulness and functionality. *See id.* at *10. The Court expressly stated that it was "not conflating usability with physical damage." *Id.* Here, in contrast, there are no allegations that any part of the Conrad's structure was harmed.[5]

Still, Circle Block contends that these two cases—along with a few cases applying other states' laws[6]—represent a division of authority and therefore support a finding of ambiguity. *See* dkt. 36 at 27–32, 37. But division of authority "is only evidence of ambiguity" and "does not establish conclusively that a particular clause is ambiguous." *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243, 248 (Ind. 2005) (holding insurance policy unambiguous despite disagreement between jurisdictions); *see Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 896 n.4 (7th Cir. 1989) (holding that it's "clearly not the law in Indiana" that an insurance policy is ambiguous "whenever there is a split in authority on [its] scope").

---

[5] This order finds no inconsistency with the holdings in *Cook* or *Ports of Indiana*, and neither decision binds this Court. *See King v. Ord. of United Com. Travelers of Am.*, 333 U.S. 153, 160–61 (1948); *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639–40 (7th Cir. 2015); *TMF Tool Co. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990).

[6] For example, Circle Block leans heavily on *Studio 417, Inc. v. Cincinnati Ins. Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), which applied Missouri law to deny a motion to dismiss for a similar COVID-19 insurance claim. *See* dkt. 36 at 27–29, 44. Yet *Studio 417* emphasized that its ruling was subject to further review and that "[s]ubsequent case law in the COVID-19 context, construing similar provisions, and under similar facts, may be persuasive." *See Studio 417*, 478 F. Supp. 3d at 801, 805.

11

Regardless, there is not the split of authority that Circle Block imagines. Instead, "the overwhelming majority of courts have found no coverage when interpreting similar language," *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, No. 20 C 3463, --- F. Supp. 3d ----, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021), and most courts that have considered the question have found similar phrases unambiguous, *see, e.g., Georgetown Dental, LLC*, 2021 WL 1967180, at *7; *MHG Hotels, LLC*, No. 1:20-cv-1620, slip op. at 10–12; *Indiana Repertory Theatre, Inc.*, No. 49D01-2004-PL-013137, slip op. at 26–27; *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 20-3211, --- F.4th ----, 2021 WL 2753874, at *2 (8th Cir. July 2, 2021); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693–94 (N.D. Ill. 2020); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 508 F. Supp. 3d 249, 254 (N.D. Ill. 2020); *Biltrite Furniture, Inc. v. Ohio Security Ins. Co.*, No. 20-CV-656, 2021 WL 3056191, at *4 (E.D. Wis. July 20, 2021); *G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, No. 20 C 5644, 2021 WL 2853370, at *3 (N.D. Ill. July 8, 2021); *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 20 C 4839, 2021 WL 2853371, at *4–8 (N.D. Ill. July 8, 2021); *CFIT Holding Corp. v. Twin City Fire Ins. Co.*, No. 20 C 3453, 2021 WL 2853376, at *3 (N.D. Ill. July 8, 2021); *Image Dental, LLC v. Citizens Ins. Co. of Am.*, No. 20-CV-02759, 2021 WL 2399988, at *8–9 (N.D. Ill. June 11, 2021); *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, No. 20 C 3169, --- F. Supp. 3d ----, 2021 WL 1208969, at *4 (N.D. Ill. Mar. 31, 2021); *Zajas, Inc. v. Badger Mut. Ins. Co.*, No. 20-CV-1055, 2021 WL 1102403, at *3 (S.D. Ill. Mar. 23, 2021); *Smeez, Inc. v. Badger Mut. Ins. Co.*, 20-cv-1132, slip op. at 10 (S.D. Ill. Mar. 22, 2021); *Bend

*Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*, No. 20 C 4636, --- F. Supp. 3d ----, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021); *TJBC, Inc. v. Cincinnati Ins. Co., Inc.*, No. 3:20-CV-00815, 2021 WL 243583, at *4 (S.D. Ill. Jan. 25, 2021).

In sum, reasonably intelligent policyholders would not think that the word "physical" has no meaning and should be ignored when interpreting the ordinary meaning of the phrase "direct physical loss or damage to property." *See G&G Oil Co. of Indiana*, 165 N.E.3d at 87. Reasonably intelligent policyholders similarly would not think that a policy requiring "direct physical loss or damage to property" would provide coverage where there is no physical damage to the insured property but only a loss or reduction of the property's usefulness or function for normal purposes. *See id.* The ordinary meaning of the phrase "direct physical loss or damage to property" does not provide coverage for economic losses caused by the COVID-19 pandemic in the absence of any physical harm to the Conrad's building or the items located within it. *See Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1040 n.4 (7th Cir. 2019) (applying Illinois law) ("[W]e have acknowledged that the central meaning of the term physical injury as it is used in everyday English—the image it would conjure up in the mind of a person unschooled in the subtleties of insurance law—is of a harmful change in appearance, shape, composition, or some other physical dimension of the injured person or thing.") (citation omitted).

13

### C. Other Allegations of Physical Loss or Damage to Property

Alternatively, Circle Block argues that it has plausibly alleged facts that show or allow the Court to draw the reasonable inference that there was "direct physical loss or damage" to the building or items located within it. *See* dkt. 36 at 14–15. In support, Circle Block points to allegations that the "physical SARS-CoV-2 particles . . . attached to the Conrad property," dkt. 1-2 at 23 ¶ 67, which caused it to incur "significant additional expenses for cleaning and disinfecting the Property," *id.* at 22 ¶ 63.

But the Policy requires "direct physical loss or damage *to* property," not merely a physical substance *on* property. *See* dkt. 20 at 12–15 (summarizing relevant Policy provisions) (emphasis added). Although the virus may have been present on surfaces at the Conrad Hotel as alleged, Circle Block has not plausibly alleged that the virus caused the type of harm to the building itself or items within it that is necessary to show "direct physical loss or damage to property." *See L&J Mattson's Co. v. Cincinnati Ins. Co., Inc.*, No. 20 C 7784, --- F. Supp. 3d ----, 2021 WL 1688153, at *5 (N.D. Ill. Apr. 29, 2021) ("One does not replace, rebuild or repair a countertop (or a doorknob or a floor) because SARS-CoV-2 . . . is present on the surface. One simply cleans the surface."); *see Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020), *cert. denied*, No. 20-998, 2021 WL 1163753 (U.S. Mar. 29, 2021) ("[U]nder Florida law, an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'"); *Crescent Plaza Hotel Owner L.P.*, 2021 WL 633356, at *3 ("[T]he coronavirus does not physically alter

14

the appearance, shape, color, structure, or other material dimension of the property.").

Circle Block argues that physical SARS-CoV-2 particles are akin to other substances that courts have found to satisfy similar contractual language requiring physical harm. *See* dkt. 36 at 19–26. These cases, none of which involve Indiana law, found the requirement of physical harm was or could be met when losses were caused by bacteria, smoke, gasoline, oil vapor, ammonia, carbon monoxide, lead particles, gas emitted from drywall, odors, pesticide, risk of rockfall and collapse, and asbestos. *See id.* These conditions, however, generally involve persistent physical contamination that requires repair or replacement, rather than cleaning and disinfecting, to remediate. *See Kim Chee LLC v. Phil. Indem. Ins. Co.*, No. 1:20-CV-1136, --- F. Supp. 3d ----, 2021 WL 1600831, at *5–6 (W.D.N.Y. Apr. 23, 2021) (collecting cases on the "spectrum" of these factual scenarios, with "persistent hazard[s]" generally covered by similar insurance provisions and "easily remedied intrusion[s]" typically left uncovered).

For example, Circle Block relies on *Motorists Mut. Ins. Co. v. Hardinger*, 131 F. App'x 823 (3d Cir. 2005), which held that a similar insurance provision could cover a homeowner's losses caused by a bacterial contamination. *See* dkt. 36 at 19. But that case involved a well that had tested positive for e-coli bacteria for nearly two years that could not be fixed after multiple attempts, rendering the home uninhabitable. *Hardinger*, 131 F. App'x at 824. The other cases cited by Circle Block on this point involve similarly persistent physical

contamination that could only be remedied with repair, replacement, or rebuilding. *See, e.g.*, *Essex Ins. Co. v. BloomSouth Flooring Corp.*, 562 F.3d 399, 401 (1st Cir. 2009) (offensive odor from carpet installation remained even after the original carpet adhesive was scraped up and the floor was re-carpeted); *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 703 (E.D. Va. 2010), *aff'd*, 504 F. App'x 251 (4th Cir. 2013) (gradual emission of toxic gases from drywall causing widespread impact to "HVAC coils, electrical wiring in outlets, ground wires and other metallic surfaces"). The substances involved in these cases thus differ from the COVID-19 virus, which Circle Block alleges is only "detectable for several days," even without cleaning. *See* dkt. 1-2 at 12 ¶ 20.

\* \* \*

At bottom, Circle Block has not plausibly alleged claims that satisfy the Policy's requirement for a "direct physical loss" to property and thus its claims must be dismissed.[7] The complaint is dismissed with prejudice because Circle Block has not offered "any meaningful indication of how it would plead differently" if given the opportunity or how that could change the outcome here. *See, e.g.*, *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) (citation omitted); Fed. R. Civ. P. 41(b).

---

[7] Circle Block contends that Fireman's Fund provided "no argument" on Dependent Property Coverage, dkt. 36 at 39, but Fireman's Fund's brief addresses Dependent Property Coverage, noting that it, like the other provisions, requires "'direct physical loss or damage to property,'" dkt. 20 at 18.

16

## IV.
## Conclusion

Defendant's motion to dismiss is **GRANTED.** Dkt. [19]. Circle Block's motion for oral argument, dkt. [38], and its motion to compel, dkt. [55], are **DENIED as moot**. This case is **DISMISSED with prejudice**. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 7/27/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Matthew Thomas Ciulla
MACGILL PC
matthew.ciulla@macgilllaw.com

John B. Drummy
KIGHTLINGER & GRAY, LLP (Indianapolis)
jdrummy@k-glaw.com

Brett Ingerman
DLA PIPER LLP
brett.ingerman@us.dlapiper.com

Robert D. MacGill
MACGILL PC
robert.macgill@macgilllaw.com

Brett Solberg
DLA PIPER LLP (US)
brett.solberg@dlapiper.com